UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Ryan Koenig and Kellie Everett, | ) C/A No. 2:18-cv-03599-DCN |
| *Plaintiffs,* | ) |
| Versus | ) **NOTICE OF MOTION AND MOTION TO EXCLUDE PLAINTIFFS' EXPERTS** |
| Edward Johnson, | ) |
| *Defendant.* | ) |

The Defendant Edward Johnson (hereinafter "the Defendant"), by and through his undersigned attorneys, moves this Court for an Order excluding the testimony and opinions of Plaintiff Ryan Koenig's non-retained expert witness and life care planner Robert Eilers, MD, FAAPM&R and of Plaintiff Ryan Koenig's retained economist expert, Tricia Yount, CPA, MAFF. Pursuant to Local Civil Rule 7.04, a full explanation of the Motion is set forth below and the undersigned asserts a separate supporting memorandum would serve no useful purpose.

## NATURE OF THE CASE

Plaintiffs Ryan Koenig and Kellie Everett filed this personal injury action on December 28, 2018 asserting multiple causes of action related to an automobile-pedestrian accident occurring in Charleston County on the morning of December 5, 2017. ECF No. 1 ¶¶ 8-9. The Plaintiff pedestrians contend they were struck and injured by Defendant's vehicle as he was exiting the parking lot of a property located at 1947 Maybank Highway in Charleston. Id. Both Plaintiffs allege they have sustained physical injury and assert claims for past, present and future damages.

In the course of discovery, Plaintiff Ryan Koenig has identified a number of retained and non-retained expert witnesses, to include Dr. Robert Eilers, a physical medicine and rehabilitation physician, identified as a non-retained expert. ECF No. 19. Plaintiff Ryan Koenig has also named Tricia Yount, CPA, MAFF as a retained economics expert witness to testify as to the present value

of economic losses allegedly sustained. Id. The parties have completed the depositions of Dr. Eilers and Ms. Yount. Dr. Eilers' opinions are inadmissible because they are unreliable and fail to assist the trier of fact as required by Rules 702 and 703 of the Federal Rules of Evidence, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993) and Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 156 (1999), as well as case law in the Fourth Circuit. Plaintiff expert Tricia Yount's calculations should be excluded as they are based on Dr. Eilers' unreliable life care plan. For these and the following reasons, the Defendant respectfully requests this Court exclude the opinions and testimony of Dr. Eilers and Ms. Yount from the trial of this case.

## Argument

Under Federal Rule of Evidence 702, trial judges act as gatekeepers to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). While Rule 702 was intended to liberalize the introduction of relevant expert evidence, courts "must recognize that[,] due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999) (quoting Daubert, 509 U.S. at 595). Therefore, a trial judge, faced with a proffer of expert scientific testimony, must conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93. The proponent of the expert testimony must establish its admissibility by a preponderance of proof. See id. at 592 n.10.

The United States Supreme Court in Daubert identified several factors that may bear on a Court's determination of the reliability of an expert's testimony. Id. at 592-94. Those factors include: (1) whether a theory or technique can be or has been tested; (2) whether it has been

subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.  See id.

In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150, (1999), the Supreme Court noted the factors discussed in Daubert were neither definitive nor exhaustive.  The Court explained that particular factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.  See id.  The Court emphasized the objective of Daubert's gatekeeping requirement is to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Id. at 152; see also Proctor v. Tsao, No. 97-2330, 1998 U.S. App. LEXIS 23905, at *7 (4th Cir. Sep. 24, 1998) ("The touchstone of admissibility is whether the testimony will assist the trier of fact.").  The main purpose of the Daubert exclusion is to protect juries from being swayed by dubious scientific testimony.  Nease v. Ford Motor Co., 848 F.3d 219, 231 (4th Cir. 2017) (quoting In re Zurn Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 613 (8th Cir. 2011).  Furthermore, "Daubert aims to prevent expert speculation."  Bryte v. Am. Household, Inc., 429 F.3d 469, 477 (4th Cir. 2005).

I.       **Dr. Eilers' Projections are Speculative, Unreliable and Inadmissible.**

Dr. Robert Eilers is a physician specializing in physical medicine and rehabilitation and he splits his time seeing patients at practices in Illinois and in Naples, Florida.  (Exhibit 1, Depo. Eilers 5:6-6:6:4).  Dr. Eilers views himself as the treating physiatrist in this matter and saw Mr. Koenig and his wife, Plaintiff Kellie Everett, in his Illinois office for evaluation.  (Depo. Eilers 20:16-21:22).  At that time, the Plaintiffs provided Dr. Eilers with certain medical records for review.  (Depo. Eilers 46:13-47:12).  The one face-to-face evaluation Dr. Eilers conducted with

the Plaintiffs was an approximately two to three-hour meeting which took place on April 2, 2018. (Depo. Eilers 50:20-51:20). While Dr. Eilers opines Mr. Koenig would reach his plateau approximately eighteen months to two years post-incident, he has not seen Mr. Koenig for evaluation since April 2, 2018, just shy of four months post-incident. (Depo. Eilers 69:4-19). After his April 2018 evaluation, Dr. Eilers conducted a follow-up, conference/recheck telephone call with Ms. Everett, the wife of Plaintiff Ryan Koenig, on August 14, 2018. (Depo. Eilers 55:16-21). Subsequent to this, Dr. Eilers had an approximately fifteen-minute telephone call in May 2019 where the Plaintiffs advised they were unable to make an appointment. (Depo. Eilers 57:5-59:2).

The record from Dr. Eilers' August 14, 2018 telephone call with Plaintiff Everett is enclosed, extracted from a larger set of records comprising Exhibit 2 to the deposition of Dr. Eilers. (Exhibit 2, August 14, 2018 Conference/Recheck of Dr. Eilers). This sets forth Dr. Eilers' opinions on the future medical care needs of Plaintiff Ryan Koenig and relied upon by Plaintiff's retained expert economist. In his report, Dr. Eilers gives opinions which essentially break down into nineteen categories of projected care as set forth in Table 1 to Ms. Yount's preliminary expert report, ranging from twenty-four-hour care to proposed home modifications. The total present value of these figures equals $11,518,635. (Exhibit 3, Preliminary Expert Report of Tricia M. Yount, CPA, MAFF).

Dr. Eilers has completed no programs in life care planning, has not obtained any certifications in life care planning and has not reviewed any life care planning literature related to this matter. (Depo. Eilers 34:13-36:4). Dr. Eilers has not spoken with other treating physicians in this matter apart from one telephone conversation with neuropsychologist Jeri Morris, which took place in May 2019 after he submitted his recommendations. (Depo. Eilers 44: 5-11; 48:14-49:5).

4

He has not reviewed and is not relying on any medical literature to support his opinions. (Depo. Eilers 49:11-15) He has not done any research for purposes of any of his opinions. (Depo. Eilers 55:13-15). He has not reviewed any depositions of witnesses, to include the depositions of Plaintiffs Koenig or Everett. (Depo. Eilers 49:16-22). He has not reviewed any billing records from any of Mr. Koenig's medical treatment and has done no research for purposes of his cost projections. (Depo. Eilers 55:10-12; 103:2-14). He did not compare his projections to any past medical bills to see if they are in line with any medical expenses incurred by the Plaintiffs. (Depo. Eilers 74:25-75:3). Dr. Eilers is not aware whether the recommendations set forth in his report are consistent with other treating physicians as he has not reviewed the medical records of all of the other providers. (Depo. Eilers 71:16-21). Dr. Eilers did nothing to independently verify the information provided to him by Mr. Koenig and Ms. Everett. (Depo. Eilers 71:11-15).

Dr. Eilers' ultimate opinions and his methodology must meet the reliability standard. See Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 203 (4th. Cir. 2001). To be reliable, the expert opinion must consist of "scientific knowledge," be "derived by scientific method," and amount to 'good science.'" Daubert, 509 U.S. at 590, 593. Expert testimony must be excluded where it consists of "subjective belief or unsupported speculation." Id. at 590. As the proponent of the expert evidence, the Plaintiffs bear the burden of establishing admissibility by a preponderance of the proof. See Bourjaily v. United States, 483 U.S. 171, 175-76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Even though identified by Plaintiff Koenig as a non-retained, treating physician expert, Dr. Eilers' testimony remains subject to the requirements of Daubert that it have a reliable basis. See Gass v. Marriott Hotel Servs., Inc., 558 F.3d 419, 426 (6th Cir. 2009).

"An expert must explain the methodology and principles supporting his opinion, and that opinion must amount to "more than a 'bottom line.'" Queen v. W.I.C., Inc., No. 14-CV-519-DRH-

SCW, 2017 U.S. Dist. LEXIS 143087, at *9 (S.D. Ill. Sep. 5, 2017) (citing Minix v. Canarecci, 597 F.3d 824, 835 (7th Cir.2010)). When questioned on the principles and methodology employed in rendering his opinions, Dr. Eilers repeatedly stated he relies on his experience having practiced for forty years and has treated patients with injuries. (Depo. Eilers 63:12-64:15; 103: 7-14; 118:10-119:19). "[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached . . . and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Israel v. Springs Indus., No. 98 CV 5106 (ENV) (RML), 2006 U.S. Dist. LEXIS 80863, at *8 (E.D.N.Y. Nov. 3, 2006) (citing Thomas v. City of Chattanooga, 398 F.3d 426, 432 (6th Cir. 2005) (quoting FED. R. EVID. 702 advisory committee note), cert. denied, 126 S. Ct. 338, 163 L. Ed. 2d 50 (2005).

Despite being given multiple opportunities to establish the bases for his recommendations, Dr. Eilers wholly fails in both his deposition and in his August 14, 2018 report to set forth how his experience leads to the conclusions reached. Dr. Eilers makes recommendations for some treatments to allegedly occur on at least an annual basis but cannot establish that Mr. Koenig has required or undergone this level of care since the drafting of his August 2018 report. This includes forty-four years of ear, nose and throat, ophthalmology and orthopedic care, though he has no knowledge if the recommendations are consistent or inconsistent with the recommendations of specialists in each of those fields. (Depo. Eilers 103:15-105:11). Dr. Eilers opines Mr. Koenig requires twenty-four-hour care within the home for the remainder of his life. However, Ms. Everett confirmed that no one has stayed in the home with the Plaintiffs at any time since the accident. (Exhibit 4, Depo Everett 33: 5-7). Dr. Eilers purports to give opinions on home modifications and costs associated with this despite never doing a home visit with the Plaintiffs and having no done

no research on listings or modifications in the St. Louis area, where the Plaintiffs reside. (Depo. Eilers 108:4-111:16). He maintains that as a real estate broker in Illinois, he is qualified to render such opinions though this broker's license is simply for personal purposes. (Depo. Eilers 110:15-111:25). He makes recommendations regarding the use of a scooter and wheelchair accessible van though he has no knowledge of what Mr. Koenig currently drives and acknowledges Mr. Koenig has not used a scooter at any point in time since this accident. (Depo. Eilers 112:1-113:21)

In addition to the recommendations being unreliable, the cost estimates themselves are inadmissible as they are speculative with no foundation. As set forth above, Dr. Eilers did not review any medical bills and did not do any research for purposes of the cost projections set forth in his report and relied upon by Plaintiff's expert economist. He does not establish any methodology employed for the cost evaluation performed and, as such the costs associated with the items in his life are plan are unreliable and inadmissible.

Dr. Eilers' opinions are speculative, unreliable and essentially amounts to nothing more than a "bottom line." His testimony leaves too great an analytical gap between the opinion offered and underlying basis. As Dr. Eilers' methodology is unreliable and unsupported, his testimony and opinions should be excluded.

**II.     The Opinions of Plaintiff Ryan Koenig's Expert Economist are Inadmissible as they are based on the Unreliable Opinions of Dr. Eilers.**

Plaintiff Ryan Koenig has retained and identified as an expert witness, Tricia Yount, CPA, MAFF. ECF No. 19. Ms. Yount is a CPA and master analyst in financial forensics. (Exhibit 5, Depo. Yount 8:25-9:7). The purpose of her analysis is to determine the present value of the expected lifetime medical care costs set forth in the report prepared by Dr. Eilers on August 14, 2018. Preliminary Expert Report of Tricia M. Yount, CPA, MAFF. In order to reach her opinions, Ms. Yount was provided with the report from Dr. Eilers, the Plaintiffs' Complaint and she

conducted a telephone call with Dr. Eilers on May 10, 2019. (Depo. Yount 9:15-10:7). She did not meet or speak with Mr. Koenig. (Depo. Yount 6:20-22). She did not review any past medical bills of Mr. Koenig. (Depo. Yount 19:18-19).

Ms. Yount was retained to take the costs set in Dr. Eilers' report, forecast the increase in cost of the different items into the future and, based on Mr. Koenig's statutory life expectancy, compute the total amount of money needed to provide this medical care and discount to present value. (Depo. Yount 15:14-25). Ms. Yount did not independently verify the information provided by Dr. Eilers in his report, gave no opinion on the appropriateness of the costs provided by Dr. Eilers and gave no independent opinion on whether Dr. Eilers was in fact qualified to provide the numbers given. (Depo. Yount 25:19-26:23). Ms. Yount simply accepted Dr. Eilers' report as accurate and, to the extent the information from Dr. Eilers is improper, this impacts the validity of her report. (Depo. Yount 12:6-22).

Ms. Yount's opinions regarding Mr. Koenig's future expenses are inadmissible. She relied solely on the expert report of Dr. Eilers in reaching her conclusions. As set forth above, there is insufficient support for Dr. Eilers' life care plan as his methodology has not been tested or evaluated. An economist's expert testimony and opinions are inadmissible where the testimony and opinions are based on another expert's inadmissible conclusions. See Johnny v. Bornowski, No. 10-04008 -CV-FJG, 2011 U.S. Dist. LEXIS 130495 (W.D. Mo. Nov. 10, 2011); Israel v. Springs Indus., No. 98 CV 5106 (ENV) (RML), 2006 U.S. Dist. LEXIS 80863 (E.D.N.Y. Nov. 3, 2006). Ms. Yount's opinions are based on unreliable conclusions of Dr. Eilers and she did not take any steps to verify the information supplied by Dr. Eilers. Accordingly, her opinions should be excluded from the trial of this case.

## **CONCLUSION**

For the foregoing reasons, Defendant Edward Johnson respectfully requests this Court exclude the opinions and testimony of Plaintiff's experts Dr. Eilers and Ms. Yount from the trial of this case.

                                          HOOD LAW FIRM, LLC
                                          172 Meeting Street
                                          Post Office Box 1508
                                          Charleston, SC  29402
                                          Ph: (843) 577-4435 / Fax: (843) 722-1630
                                          Email: Info@hoodlaw.com

                                          **/s/ Brian E. Johnson**
                                          Robert H. Hood, Jr. (6998)
                                          Brian E. Johnson (10098)
                                          Brian J. Kern (10885)

                                          ***Attorneys for the Defendant***
                                          ***Edward Johnson***

**February 21, 2020**
Charleston, South Carolina