# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Ryan Koenig and Kellie Everett, <br><br> Plaintiffs, <br><br> vs. <br><br> Edward Johnson, <br><br> Defendant. | C/A No.: 2:18-cv-03599-DCN <br><br><br> **PLAINTIFF RYAN KOENIG'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE** |

Plaintiff Ryan Koenig, by and through his undersigned counsel, hereby responds to Defendant's Motion to Exclude Plaintiffs' Experts and request that it be denied.

## FACTS

This case involves an incident that occurred on December 5, 2017, when the Plaintiffs were hit by a car driven by the Defendant who was stopped in the parking lot of a private business, James Island Cleaners, waiting to turn right onto Maybank Highway. The incident was captured on a surveillance camera located inside James Island Cleaners. Plaintiff Ryan Koenig, as a result of being run over by Defendant's vehicle, suffered catastrophic injuries, including a skull fracture, subdural hematoma, subarachnoid hemorrhage, temporal bone fracture, hemorrhagic contusions, midline shift of the brain, traumatic brain injury, vestibular dysfunction and hearing loss, tibial fracture, femoral fracture, ankle fracture, and permanent brain damage. See Complaint ¶ 10.

Mr. Koenig was evaluated by Dr. Robert Eilers, a board-certified physician specializing in physical rehabilitation medicine. Dr. Eilers opined extensively about Mr. Koenig's deficits and his future medical needs. Exhibit A, Eilers Record from April 4, 2018; Exhibit B, Eilers Record from August 18, 2018. Tricia Yount, an economist, issued a report with regard to the present value of Mr. Koenig's future economic loss based on Dr. Eilers' recommendations. Exhibit C, Yount Report.

1

Defendant has filed a motion seeking to exclude Dr. Eilers from testifying and also seeking to exclude Ms. Yount from testifying with regard to Mr. Koenig's future economic loss.

## LEGAL STANDARD

Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to offer opinion testimony only if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 imposes a "basic gatekeeping obligation" on the trial court to ensure that an expert witness "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). This is determined by whether the witness's opinion "rests on a reliable foundation," i.e., "whether the reasoning or methodology underlying the testimony is scientifically valid"—and whether the opinion is "relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 582-83, 597 (1993); *Nease v. Ford Motor Co.*, 848 F.3d 219, 230 (4th Cir. 2017) ("Rule 702 imposes a special gatekeeping obligation on the trial judge to ensure that an opinion offered by an expert is reliable.") (citation omitted), *cert. denied*, 137 S. Ct. 2250, 198 L.Ed. 2d 680 (2017). The proponent of expert testimony must demonstrate that the testimony satisfies these requirements. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) ("The proponent of the testimony must establish its admissibility by a preponderance of proof.")

## ARGUMENT

Dr. Eilers completed medical school at the University of Louisville and completed his residency and internship at Northwestern University. Exhibit D, Eilers CV. He is currently in private

practice with Physical Medicine & Rehabilitation Associates. Eilers Depo p.6, lines 2-12. Dr. Eilers has offices in Illinois and Florida and sees patients and is affiliated with hospitals in both states. Approximately forty to fifty percent of his patients have some type of head injury or brain trauma. Eilers Depo p.6, line 13-p.9, line 14, excerpts attached as Exhibit E. Dr. Eilers has been on faculty as an instructor at Northwestern University for 40 years in both the classroom and clinical settings. Eilers Depo p.13, line 6 - p.14, line 9.

Dr. Eilers is eminently qualified to testify about future medical needs and the cost of those needs. In addition to testifying on average in two federal cases per year, according to his testimony list produced pursuant to a defense subpoena, attached as Exhibit F, Dr. Eilers has been qualified and testified in the area of life care planning in federal court. In *Farley v. U.S.*, 98 F.Supp.3d 299 (D.N.H. April 3, 2015), Dr. Eilers testified with regard to a life care plan for a stroke victim. Case attached as Exhibit G. In considering Dr. Eilers' testimony and ultimately accepting his plan in full, the District Judge stated: "Dr. Eilers offered practical insight regarding Mr. Farley's likely future medical needs based on several decades of relevant experience. His testimony was clear and succinct, and his testimony regarding the mental and physical health benefits associated with allowing Mr. Farley to move home with his family was compelling." *Id.* at 344.

Dr. Eilers is a physical and rehabilitation physician who has treated severely injured patients for more than four decades. Dr. Eilers relies on that experience in opining as to what Mr. Koenig needs and what would provide him the best care. As to Mr. Koenig's severe brain injury and Dr. Eilers' recommendation regarding attendant care, Dr. Eilers testified as follows:

> Q: If his other treating providers have told him that he does not need 24-hour care, you would disagree with that?
>
> A: I do.
>
> Q: Have you seen any records that any other provider has made that recommendation?

> A: If they have or haven't, you all can consider that. My obligation to him and to his wife, as explained, I don't feel he's safe being on his own.
>
> Now, if he burns the house down and dies, I've told them my concern. I have concerns about him. I really am not comfortable with him driving a car, but that's his choice. I'm not responsible for that. But if I tell her he's safe to be left alone, I don't feel that he is really safe to be on his own.
>
> I told them what they need to consider. I don't tell her what she has to do, and I don't tell Ryan what he must do. I advise them what I feel what is most appropriate and my concerns. They make the decision. They sustain any consequence that's involved. And I've advised them. They've asked my opinions. I've told them, whether they like it or not, I['ve] done what I need to do, and from there on it's up to them.

Eilers Depo p.96, line 5 - p.97, line 5. Dr. Eilers further explained in detail his qualifications with regard to his recommendation about home modifications. Eilers Depo p.109, line 8 - p.110, line 25.

In addition to the care needed for Mr. Koenig to adjust and deal with his permanent traumatic brain injury, Dr. Eilers also explained in detail the basis for his opinions with regard to Mr. Koenig's future orthopedic medical needs. Eilers Depo p.98, line 20 - p.100, line 15. Mr. Koenig was also seen recently by his treating orthopedic surgeon, Dr. Joseph Nadaud. Dr. Nadaud found that Mr. Koenig may require removal of his hardware in the future as well as future cortisone injections, physical therapy, and ultimately total knee replacements. Record attached as Exhibit H. Further, Dr. Nadaud opined that Mr. Koenig has post-traumatic arthritis in his left ankle which would require removal of the surgery hardware at a cost of $14,650.00. Dr. Nadaud further opined that Mr. Koenig would require multiple ankle replacements at a cost of approximately $40,000.00 for each every 10 to 15 years, noting that each successive replacement would be more expensive because surgical implants were more expensive in the revision setting. With regard to Mr. Koenig's knee, Dr. Nadaud opined that Mr. Koenig has advanced arthritic changes in his left knee and that Mr. Koenig would need cortisone injections every six months indefinitely, at a cost of $1,330.00 each, as well as total knee

4

replacements every 12 to 15 years. Dr. Nadaud provided a cost estimate of $72,000.00 for the surgery but noted that each successive surgery would be more expensive.

Dr. Eilers, before Dr. Nadaud's latest report, opined that Koenig would need two ankle replacements and two knee replacements at an estimated cost of $40,000.00 each. Dr. Eilers' estimate for the ankle procedure was identical to Dr. Nadaud's estimate and less than Dr. Nadaud's estimate with regard to the knee. Further, Dr. Eilers' record calls for two replacement surgeries for Mr. Koenig's knee, hips and ankle, consistent with Dr. Nadaud's recommendation that they be done every 12 to 15 years and, if anything, Dr. Eilers' opinion is on the conservative side. Dr. Eilers explained his methodology for assigning costs in his deposition:

> Q: In your report from April 2, 2018, what process did you go through in terms of assigning various costs to various aspects of treatment?
>
> A: That's what I'm intimately familiar with in terms of patients and families and advising them on these costs. So that's very much what I'm aware of.
> …
> A: For instance, for attendant care, we call the agencies. I check with them in terms of telling what it's going to roughly cost to provide that. And, obviously, calling to get tests done for patients.
>
> It's the same thing. You give them information on what it's going to cost for these services. You know, we've, obviously, seen a lot of patients with joint replacements and provide that information to them. That's fairly routine. These are pretty routine charges and costs.

Eilers Depo p.73, lines 19-25; p.74, lines 14-24.

The defense, in claiming that Dr. Eilers is not qualified to provide opinions about life care planning and does not have sufficient bases for his opinions, is essentially cherry-picking from Dr. Eilers' deposition and taking a myopic view of his testimony. The defense argues that Dr. Eilers is not a "certified life care planner." However, life care planners rely on the treating doctors for recommendations about future medical care. As Dr. Eilers explained during his deposition, "[l]ife care planners have to generally come to the physiatrists and the physicians to get the [in]formation

5

that they would write up. So they would have to rely upon what we would say or what another physician in another area would say." Eilers Depo p.34, line 13-p.35, line 3. In this case, Dr. Eilers is arguably in the best position - given his extensive experience and direct treatment of Mr. Koenig - to assess his patient's future medical needs and the costs thereof.

Dr. Eilers has decades of experience treating severely injured patients and making recommendations as to their lifetime medical needs. This is not a case, as the defense suggests, where the expert's "word" should simply be taken. The Court cannot exclude Dr. Eilers' testimony when it is founded on approximately forty years of practice in the field of physical medicine and rehabilitative care, and would clearly assist the jury in deciding an issue of fact (i.e., what, if any, future medical needs Mr. Koenig will have). The jury can adopt Dr. Eilers' opinions in full, as the district judge did in *Farley*, or the jury can give it no weight. The defense may not agree with Dr. Eilers' opinions, and they have their paid experts to rebut them, but there is simply no ground for Dr. Eilers not being able to testify and explain to the jury why Mr. Koenig needs this care and how much it will cost. Likewise, the jury should also consider Tricia Yount's opinions with regard to the present value of those future medical needs.

## CONCLUSION

For the reasons previously stated, Plaintiff Ryan Koenig requests that Defendant's Motion to Exclude Dr. Robert Eilers and Tricia Yount's testimony be denied.

Respectfully submitted,

LAW OFFICE OF KENNETH E. BERGER, LLC

/s/ Bradley L. Lanford
blanford@bergerlawsc.com
Federal Bar No.: 9371
5205 Forest Drive, Suite Two
Columbia, SC 29206
(803) 790-2800 (phone)
(803) 790-2870 (fax)

Attorney for Plaintiff Ryan Koenig

/s/ Kenneth E. Berger
Kenneth E. Berger
kberger@bergerlawsc.com
Federal Bar No.: 11083
5205 Forest Drive, Suite Two
Columbia, SC 29206
(803) 790-2800 (phone)
(803) 790-2870 (fax)
Attorney for Plaintiff Ryan Koenig

FINNEY INJURY LAW

/s/ Christopher J. Finney
Christopher J. Finney
Chris@finneyinjurylaw.com
Federal Bar No.: 62888MO
225 S. Meramec Avenue, Suite 821T
Clayton, MO 63105
(314) 293-4222 (phone)
(314) 754-9477 (fax)
Attorney for Plaintiff Ryan Koenig

Columbia, South Carolina
March 6, 2020